Benjamin **BRAY**, Jr., a minor, by next friend, Sheila **BRAY**, and Benjamin Bray, Sr., Plaintiffs,

v.

The **HOBART CITY SCHOOL CORPORATION**; Eric Witherspoon, Ph.D., in his capacity as Superintendent of the Hobart City School Corporation and Individually; the Northwest Indiana Special Education Cooperative; Patricia Pierce, in her capacity as Director of the Northwest Indiana Special Education Cooperative and Individually; Joan Machuca, in her capacity as Assistant Director to the Northwest Indiana Special Education Cooperative, and Individually; Deborah Owens; and the Indiana Department of Education, Defendants.

Civ. No. H 91–370.

United States District Court,
N.D. Indiana,
Hammond Division.

April 9, 1993.

Terrance L. Smith, East Chicago, IN, for plaintiffs.

Kathleen Maicher, Merrillville, IN, Deborah Owens, Oak Park, IL, Atty. General's Office, Indianapolis, IN, Gary Matthews, Hammond, IN, for defendants.

### ORDER

RODOVICH, United States Magistrate Judge.

This matter is before the court on four motions. The Motion to Dismiss the Amended Complaint was filed by the defendant, the Indiana Department of Education, on January 24, 1992. The Motion for Summary Judgment was filed by the defendants, the Northwest Indiana Special Education Cooperative (NISEC), Patricia Pierce, in her capacity as Director of NISEC and Individually, and Joan Machuca, in her capacity as Assistant Director to NISEC and Individually, on February 6, 1992. The Motion for Summary Judgment was filed by the defendants, the Hobart City School Corporation and Eric Witherspoon, Ph.D., in his capacity as Superintendent of the Hobart City School Corporation and Individually, on February 21, 1992. The Motion to Dismiss was filed by the defendant, Deborah Owens, on March 2, 1992. For the reasons set forth below, the Motion to Dismiss the Amended Complaint filed by the defendant, the Indiana Department of Education, is DENIED. The Motions for Summary Judgment filed by the defendants, NISEC, Patricia Pierce, Joan Machuca, Hobart City School Corporation, and Eric Witherspoon are DENIED. The Motion to Dismiss filed by the defendant, Deborah Owens, is GRANTED.

### FACTUAL BACKGROUND

The plaintiff, Benjamin Bray, Jr., was born in 1978 and has a post-meningitis syndrome condition. Benjamin was placed into a public school special education program from 1984 through 1988. In October, 1989, NISEC developed a program for children with severe emotional handicaps in the areas of speech and language training. NISEC designed the program in an effort to mainstream children with disabilities into the local schools under the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400 et seq. NISEC and the Hobart City School Corporation are the local educational agencies that act as the agents of the State and ensure compliance with the IDEA.

NISEC and the Hobart City School Corporation held a case conference meeting in October, 1989, to coordinate an individualized educational program (IEP) for Benjamin. The IEP attempted to mainstream Benjamin into a local school environment and to increase contact between Benjamin and other children. In December, 1989, Benjamin began to experience increased seizure activity at home. His parents, Benjamin Bray, Sr. and Sheila Bray, moved him into Charter Barkley Hospital in late December, 1989, where he stayed for nine weeks. The Brays then moved Benjamin to the Camelot Care Center in Palatine, Illinois, in March, 1990. The Brays did not obtain the consent of NISEC or the Hobart City School Corporation to place Benjamin in either facility. However, NISEC and the Hobart City School Corporation did receive updates on Benjamin's condition from both the Charter Barkley Hospital and the Camelot Care Center.

Case conference committee meetings were held in February and June, 1990, but NISEC and the parents could not agree on Benja-

min's placement. In April, 1991, the Brays again sought residential placement for Benjamin, but NISEC recommended a diagnostic placement at a local school. The case conference committee eventually recommended a local school placement. Benjamin's parents sought a due process hearing which was held on June 20, 1991, and was conducted by an impartial hearing officer.

On July 11, 1991, the hearing officer determined that Benjamin should be placed in a residential home. However, since the Brays placed Benjamin in the Camelot Care Center without the consent or knowledge of the school officials, the hearing officer decided that the Brays would be responsible for the expenses associated with Benjamin's "past and current placement" at the Camelot Care Center. Finally, the hearing officer ordered NISEC and the Hobart City School Corporation to draft a new IEP and an application in accord with his findings within thirty (30) school days. Neither party appealed the hearing officer's findings.

On September 16, 1991, NISEC and the Hobart City School Corporation submitted Benjamin's IEP and the application for residential placement to the Indiana Department of Education (State). However, on September 25, 1991, the State informed NISEC that the application and the IEP were incomplete. On October 16, 1991, Benjamin and his parents filed suit contending that NISEC, the Hobart City School Corporation, and their agents prepared and sent a defective application to the State in violation of the hearing officer's order. The Brays also contend that Deborah Owens, the attorney for NISEC, deliberately advised NISEC to proceed in an unlawful manner by disregarding the findings of the hearing officer. Further, the Brays allege that the various defendants' actions constituted wilful and deliberate misconduct in violation of 42 U.S.C. § 1983 and the Fourteenth Amendment. Finally, the Brays assert that the Indiana application review process violates the IDEA since the process allows the State to deny the child the recommended placement funding or to delay implementing the child's free and appropriate public education.

On January 24, 1992, the State filed its Motion to Dismiss the Amended Complaint contending that the Brays failed to state a claim and failed to exhaust their administrative remedies. On February 6, 1992, NISEC, Patricia Pierce, in her capacity as Director of NISEC and Individually, and Joan Machuca, in her capacity as Assistant Director to NISEC and Individually, filed their Motion for Summary Judgment contending that the Brays failed to exhaust their administrative remedies before bringing an action under IDEA and Section 1983. On February 21, 1992, the Hobart City School Corporation and Eric Witherspoon, Ph.D., in his capacity as Superintendent of the Hobart City School Corporation and Individually, filed their Motion for Summary Judgment also contending that the Brays failed to exhaust their administrative remedies. Finally, on March 2, 1992, Deborah Owens filed her Motion to Dismiss contending that she cannot be considered a state actor under Section 1983 and that she is protected by the attorney client privilege and qualified immunity.

## DISCUSSION

### *Motion for Summary Judgment*

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is proper only if it is demonstrated "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Trautvetter v. Quick,* 916 F.2d 1140, 1147 (7th Cir.1990); *McGraw–Edison v. Walt Disney Productions,* 787 F.2d 1163, 1167 (7th Cir.1986); *Ross v. Franzen,* 777 F.2d 1216, 1220 (7th Cir.1985); and *Big O Tire Dealers, Inc. v. Big O Warehouse,* 741 F.2d 160, 163 (7th Cir.1984). The burden is upon the moving party to establish that no material facts are in genuine dispute, and any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 160, 90 S.Ct. 1598, 1610, 26 L.Ed.2d 142, 155 (1970); *Dahnke v. Teamsters Local 695,* 906 F.2d 1192, 1195 (7th Cir.1990); and *Munson v. Friske,* 754 F.2d 683, 690 (7th Cir.1985). A fact is material if it is outcome determinative under applicable law. *Doe v. Small,* 934 F.2d 743, 752 (7th Cir.1991); *Whetstine v. The Gates Rubber Company,* 895 F.2d 388, 392 (7th Cir.1990); and *Big O Tire Dealers, Inc.,* 741 F.2d at 163. Even if

the facts are not in dispute, summary judgment is inappropriate when the information before the court reveals a good faith dispute as to inferences to be drawn from those facts. *Powers v. Dole,* 782 F.2d 689, 694 (7th Cir. 1986); *Munson,* 754 F.2d at 690; and *Burns v. Rockford Life Insurance Company,* 740 F.2d 542, 546 (7th Cir.1984). Finally, summary judgment generally is not an appropriate means of resolving questions of motive and intent. *United Association of Black Landscapers v. City of Milwaukee,* 916 F.2d 1261, 1268 (7th Cir.1990); *Bartman v. Allis–Chalmers Corporation,* 799 F.2d 311, 312 (7th Cir.1986); and *Munson,* 754 F.2d at 690.

■ In deciding a motion for summary judgment, the trial court must determine whether the evidence presented by the party opposed to the summary judgment is such that a reasonable jury might find in favor of that party after a trial.

The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

[T]his standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202, 212 (1986)

*See also: Celotex Corporation v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265, 273 (1986); *County of Vernon v. United States,* 933 F.2d 532, 534 (7th Cir. 1991); *Visser v. Packer Engineering Associates, Inc.,* 924 F.2d 655, 660 (7th Cir.1991); and *Fitzpatrick v. Catholic Bishop of Chicago,* 916 F.2d 1254, 1256 (7th Cir.1990).

*Applicable Statutory Provisions*

■ This action was brought under the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400 *et seq.* The IDEA is a funding statute which allows the federal government to provide financial assistance to the states for the education of all children with disabilities. However, a state is required to meet certain prerequisites to receive the financial aid including providing procedural safeguards to protect the children's rights. The IDEA does not require a specific procedural format, and a state may utilize any procedural structure as long as it meets the minimum federal standards. 20 U.S.C. § 1415 provides in pertinent part:

**(a) Establishment and maintenance**

Any State educational agency, any local educational agency, and any intermediate educational unit which receives assistance under this subchapter shall establish and maintain procedures in accordance with subsection (b) through subsection (e) of this section to assure that children with disabilities and their parents or guardians are guaranteed procedural safeguards with respect to the provision of free appropriate public education by such agencies and units.

**(b) Required procedures; hearing.**

(1) The procedures required by this section shall include, but shall not be limited to—

\* \* \* \* \* \*

(E) an opportunity to present complaints with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child.

(2) Whenever a complaint has been received under paragraph (1) of this subsection, the parents ... shall have the opportunity for an impartial due process hearing which shall be conducted by the State educational agency or by the local educational agency ... as determined by State law or by the State educational agency....

**(c) Review of local decision by State educational agency**

If the hearing required in paragraph (2) of subsection (b) of this section is conducted by a local educational agency ... any party aggrieved by the findings and decision rendered in such a hearing may appeal to the State educational agency which shall conduct an impartial review of such hearing. The officer conducting such review

shall make an independent decision upon completion of such review.

**(d) Enumeration of rights accorded parties to hearings**

Any party to any hearing conducted pursuant to subsections (b) and (c) of this section shall be accorded—

(1) the right to be accompanied and advised by counsel and by individuals with special knowledge and training with respect to the problems of children with disabilities,

(2) the right to present evidence and confront, cross-examine, and compel the attendance of the witnesses,

(3) the right to a written or electronic verbatim record of such hearing, and

(4) the right to written findings of fact and decisions (which findings and decisions shall be made available to the public consistent with the requirements of section 1417(c) of this title and shall also be transmitted to the advisory panel established pursuant to section 1413(a)(12) of this title).

**(e) Civil action; jurisdiction**

(1) A decision made in a hearing conducted pursuant to paragraph (2) of subsection (b) of this section shall be final, except that any party involved in such hearing may appeal such decision under the provisions of subsection (c) and paragraph (2) of this subsection. A decision under subsection (c) of this section shall be final, except that any party may bring an action under paragraph (2) of this subsection.

(2) Any party aggrieved by the findings and decision made under subsection (b) of this section who does not have the right to appeal under subsection (c) of this section, and any party aggrieved by the findings and decision under subsection (c) of this section, shall have the right to bring a civil action with respect to the complaint presented pursuant to this section, which action may be brought in any State court of competent jurisdiction or in any district court of the United States without regard to the amount in controversy

.     .     .     .     .

The State of Indiana has created its own procedures to implement the IDEA through I.C. § 20–1–1–6 and the administrative regulations contained in 511 IAC 7–3–1 *et. seq.* First, a case conference committee meets to assess the child's educational needs and to develop an IEP. 511 IAC 7–12–1(a)–(k). If either party disagrees with the case conference committee's assessment, a due process hearing can be requested. 511 IAC 7–15–5(a). The hearing officer who conducts the due process hearing shall submit his findings and recommendation in writing within fifteen (15) school days after the hearing. 511 IAC 7–15–5(r). If either party disagrees with the hearing officer's findings and recommendation, an appeal can be filed with the Board of Special Education Appeals. 511 IAC 7–15–5(u) and 511 IAC 7–15–6. Any party that disagrees with the Board of Appeals' determination can file a civil action. 511 IAC 7–15–6(p). In addition, 511 IAC 7–15–5 provides a catch-all procedure to investigate any complaints alleging violations of federal and state laws that apply to special education.

If the hearing officer determines that the child needs residential or private placement, the State requires the child to file an application, formerly known as a Rule S–5 application, which currently is detailed under 511 IAC 7–12–5 *et seq.* The local school corporation must develop an application and an IEP for the child which are submitted to the Division of Special Education. 511 IAC 7–12–5(e). The Division of Special Education then conducts an independent review of the application and the IEP pursuant to 511 IAC 7–12–5 which states:

(a) Under IC 20–1–6–19, this section sets forth the procedures to be followed when a public school corporation, upon recommendation of the case conference committee, applies to the Indiana state board of education for alternative or residential services for educational reasons. This section is not applicable to the following situations:

(1) Placement in a state school upon the recommendation of the case conference committee.

(2) Unilateral action of the parent in placing a student with disabilities in a private school.

(3) Placement in any residential facility by any other public agency for other than educational reasons.

(b) All due process and procedural safeguards under 511 IAC 7–7 and 511 IAC 7–15 apply to this section.

\* \* \* \* \* \*

(f) The division of special education will review the application and determine if all necessary components and documentation of procedural safeguards are present and complete. The division will notify the public school corporation and the parents whether additional information is needed to complete the application within ten (10) business days after receipt of the application.

\* \* \* \* \* \*

(h) The division of special education shall distribute copies of the completed application to representatives of other state agencies that operate or support alternative or residential special education programs or have resources which may be of assistance in providing services to the student for their review and recommendation.

(i) A multiagency review committee meeting must be scheduled on at least a monthly basis. The local school corporation, the parents, and representatives of local agencies are invited to attend.

(j) Alternative service options must be fully explored and eliminated as inappropriate or unavailable before residential placement is considered.

(k) Residential placement in an Indiana state supported or state operated facility shall be fully explored first as an appropriate placement before placement in a private special school is recommended. . . .

(*l*) The division of special education shall make the recommendation for alternative or residential service. The written recommendation must be sent to the parent and the public school corporation, and include the information that either party has the right to appeal the recommendation through the due process hearing procedures described in 511 IAC 7–15–5. If no request for a due process hearing is filed within ten (10) calendar days of the date the recommendation is received by the parent or the public school corporation, the recommendation is deemed accepted. . . .

The parents or the school may appeal the recommendation of the Division through the procedures described in 511 IAC 7–15–6.

*Exhaustion of Administrative Remedies*

All of the defendants contend that the Brays are barred from federal court since they failed to exhaust their administrative remedies under the Indiana Administrative Code.[1] The State has raised one additional issue and contends that the Brays should have requested a due process hearing under 511 IAC 7–15–5.

 Although the defendants contend that the Brays must exhaust all available administrative remedies, exhaustion is not required when it would be futile. *See Honig v. Doe*, 484 U.S. 305, 326, 108 S.Ct. 592, 606,

---

1. The Hobart City School Corporation, NISEC and the State contend that the Brays could have filed a complaint under 511 IAC 7–1–7, which was in effect when the case was filed and stated in part:

Sec. 7. COMPLAINT PROCEDURES. Complaints concerning the implementation of this Rule shall be investigated by the Division of Special Education of the Department of Public Instruction in accordance with the following procedures.
The Division of Education shall designate specific individuals who hold special education licensing, who are employed within the Division and who shall be responsible for investigating and acting on any allegations which may be made by public agencies, or private individuals, or organizations, of actions taken by any public agency that are contrary to the requirements of free appropriate public education as defined on page 3 of this Rule. [511 IAC 7–1–1(J)].

The person conducting the investigation shall have the responsibility to provide for negotiations, technical assistance activities, and other remedial action to achieve compliance.
Within forty (40) school days of the initiation of a complaint, the person who is conducting the investigation shall file a final written response with the complainant, the superintendent of the school involved and the State Director of Special Education.
The response shall be binding on all parties and the parties have thirty (30) school days from the receipt of the response to achieve compliance.
Failure to achieve compliance shall result in the withholding of State and Federal funds. The response to the complaint may be appealed to the Commission on General Education by any of the parties.
Since this section was repealed in December, 1991, the issue of exhaustion under this section is moot.

98 L.Ed.2d 686 (1988); *Kerr Center Parents Association v. Charles,* 897 F.2d 1463, 1469 (9th Cir.1990); *Crawford v. Pittman,* 708 F.2d 1028, 1033 n. 17 (5th Cir.1983) (the plaintiffs were not required to exhaust administrative remedies since the state refused to consider special education programs in excess of 180 days); *Tokarcik v. Forest Hills School District,* 665 F.2d 443, 447 n. 5 (3d Cir.1981); *Monahan v. State of Nebraska,* 645 F.2d 592, 597 (8th Cir.1981) (the plaintiff was not required to exhaust administrative remedies when he alleged that the administrative remedies violated federal law); and *Doe v. Koger,* 480 F.Supp. 225, 227 (N.D.Ind. 1979) (since no administrative remedy existed for the plaintiff's claim, the plaintiff did not have to exhaust administrative procedures).

In the instant case, the Brays are challenging the actions of the individual defendants as well as the validity of the application review procedure. However, a hearing officer appointed under 511 IAC 5–15–5 does not have the authority to determine that the application review process is illegal, nor would his decision bind the State. In addition, the hearing officer does not have the authority to determine that the defendants' conduct violated the IDEA or to order the defendants to conform their actions to the IDEA. Since the Indiana Administrative Code does not provide either an adequate means to challenge the application review process or an appropriate remedy, exhaustion would be futile.

### Exhaustion of Remedies Under Section 1983

■ The defendants also contend that the Brays are barred from bringing a Section 1983 claim since they failed to exhaust administrative remedies. 20 U.S.C. § 1415(f) states:

Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, title V of the Rehabilitation Act of 1973 [29 U.S.C. § 790 *et. seq.*], or other Federal statutes protecting the rights of children and youth with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (b)(2) and (c) of this section shall be exhausted to the same extent as would be required had the action been brought under this subchapter.

However, there is no exhaustion of remedies requirement in an action brought under Section 1983. *See Patsy v. Board of Regents of Florida,* 457 U.S. 496, 500–01, 102 S.Ct. 2557, 2560, 73 L.Ed.2d 172 (1982) (exhaustion is not a prerequisite to an action under Section 1983); and *Alleghany Corporation v. Haase,* 896 F.2d 1046, 1055 (7th Cir.1990).

■ The defendants also contend that the Brays' action challenging the validity of the application review process is moot since Benjamin has been placed in residential care. However, an action is not considered moot if it is "capable of repetition, yet evading review." *Williams v. Anderson,* 959 F.2d 1411, 1417 (7th Cir.1992); and *Jones v. Sullivan,* 938 F.2d 801, 805 (7th Cir.1991). According to Indiana law, a disabled child under the age of twenty-two years is entitled to a free and appropriate public education. I.C. § 20–1–6–1. In addition, the local school corporation is required to review the child's placement annually and to change the IEP if necessary. *See* 511 IAC 7–12–5(u). Since Benjamin could be subjected to the same review procedures again before he is twenty-two years old, the action is not moot.

■ Finally, the defendants contend that the Brays should be precluded from proceeding in federal court since they continued to exhaust the application review process after filing this action. However, the Brays' actions cannot be considered an admission that the application review process is consistent with the IDEA or that the defendants' actions did not violate the IDEA or Fourteenth Amendment. The defendants have failed to cite any case authority which holds that the Brays cannot invoke the administrative remedies while they are challenging the procedures in federal court. Therefore, the Brays' attempt to exhaust state remedies is not relevant to the pending summary judgment motion.

### Motion to Dismiss Amended Complaint

■ The State contends that it has the right to make an independent review of the

applications without violating the IDEA. Both parties have attached exhibits to their briefs.

Federal Rule of Civil Procedure 12(b) states in relevant part:

If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

See *Horn v. City of Chicago*, 860 F.2d 700, 703 n. 6 (7th Cir.1988); *Beam v. IPCO Corporation*, 838 F.2d 242, 244 (7th Cir.1988); *Sawyer v. United States*, 831 F.2d 755, 759 (7th Cir.1987); *Smith v. DeBartoli*, 769 F.2d 451, 452 (7th Cir.1985); and *National Family Insurance Company v. Exchange National Bank*, 474 F.2d 237, 239 (7th Cir.1973). Since both parties have attached exhibits to their motions, the motion to dismiss will be treated as a summary judgment motion.

The Brays contend that the State's application review procedures violate the finality requirement of 20 U.S.C. § 1415(e)(1). In *Antkowiak by Antkowiak v. Ambach*, 838 F.2d 635 (2nd Cir.1988), a hearing officer determined that the child needed residential placement under the Education for Handicapped Children Act (EHA), the predecessor of the IDEA, and neither the parents nor the school board appealed the decision. However, pursuant to New York Education Law, the Commissioner of the New York State Education Department conducted an independent review of the case and reversed the hearing officer's decision. The Court of Appeals discussed the Commissioner's right to review the hearing officer's decision and stated:

Federal courts have authority under the EHA to enforce state procedure consistent with the federal scheme, but procedures "inconsistent with the federally-mandated procedures cannot, of course, be enforced by a federal court." (citations omitted) While state procedures which more stringently protect the rights of the handicapped and their parents are consistent

with the EHA and thus enforceable ... those that merely add additional steps not contemplated in the scheme of the Act are not enforceable. (citation omitted) The EHA considers final any unappealed decision of a hearing officer, *see* 20 U.S.C. § 1415(e)(1), and no further review appears to be contemplated under the Act. Thus, to the extent that the Commissioner's *sua sponte* review "would ... subject children and their parents to an additional step not required by the EHA," (citation omitted) it would seem inconsistent with the finality provision of section 1415 and therefore without "official status or standing under the EHA," ...

838 F.2d at 641

Similarly, in *Monahan v. State of Nebraska*, 491 F.Supp. 1074 (D.Neb.1980), a hearing officer determined that a child needed residential placement. However, the Commissioner of Education reviewed the decision and determined that the child should be placed in a public school. A class action was filed to challenge the Nebraska statute which allowed the Commissioner of Education to review a hearing officer's decision. The plaintiffs requested a preliminary injunction to provide interim placement for the children. The court granted the preliminary injunction and stated:

Comparing the federal procedural scheme to that of Nebraska, the Court finds an important inconsistency between the state and federal procedures. The Nebraska law provides that the due process hearings shall be conducted by the State Department of Education using impartial hearing officers.... However, in contrast to the federal guidelines, a final decision is not made in the due process hearing. Rather, the hearing officer merely prepares a report which is then delivered to the Commissioner of Education.... Once the Commissioner receives the report, the Nebraska statute provides:

After reviewing such findings and decisions the Commissioner of Education shall then recommend or direct such action as may be necessary.

Neb.Rev.Stat. § 43–62

Based on this statutory language, it appears that the Commissioner of Education has the discretionary authority to accept, reject or modify the decision made in the due process hearing. Such discretion conflicts with the federal requirement that the decision made in the due process hearing shall be final except for judicial review....

491 F.Supp. at 1091

The complaints later were dismissed as moot "because the allegedly offending provision of state law had been amended to make it clear that the Commissioner of Education could not change a decision made by a hearing officer." *See Monahan v. State of Nebraska,* 687 F.2d 1164, 1167 (8th Cir.1982); and Neb. Rev.Stat. § 43–662 (1980).

In the instant case, 20 U.S.C. § 1415(e)(1) states that the decision of the hearing officer shall be final. The application review process detailed in 511 IAC 7–12–5 is similar to the statutes in *Antkowiak* and *Monahan* which allowed the State to review the hearing officer's decision. In addition, 511 IAC 7–12–5 allows the State to circumvent the due process procedures in 511 IAC 7–15–5 by permitting the State to review the hearing officer's decision even if no appeal has been taken. Therefore, 511 IAC 7–12–5 clearly violates the finality requirement of the IDEA.

The Code of Federal Regulations interprets and clarifies the United States Code. 34 C.F.R. § 300.342 states:

(a) On October 1, 1977, and at the beginning of each school year thereafter, each public agency shall have in effect an individualized education program for every handicapped child who is receiving special education from that agency.

(b) An individualized education program must:

(1) Be in effect before special education and related services are provided to a child; and

(2) Be implemented as soon as possible following the meetings under § 300.343.

Policy letters are included within the Code of Federal Regulations to provide guidance when implementing the regulations. Policy letter number 3 states:

*In requiring that an IEP be in effect before special education and related ser-vices are provided, what does be in effect mean?*

As used in the regulations, the term *be in effect* means that the IEP (1) has been developed properly (i.e., at a meeting(s) involving all of the participants specified in the Act (parent, teacher, agency representative, and, where appropriate, the child)); (2) is regarded by both the parents and agency as appropriate in terms of the child's needs, specified goals and objectives, and the services to be provided; and (3) will be implemented as written.

Policy letter number 4 states:

*How much of a delay is permissible between the time a handicapped child's IEP is finalized and when special education is provided?*

In general, no delay is permissible. It is expected that the special education and related services set out in a child's IEP will be provided by the agency beginning immediately after the IEP is finalized. The comment following § 300.342 identifies some exceptions ((1) when the meetings occur during the summer or other vacation period, or (2) when there are circumstances which require a short delay, such as working out transportation arrangements). However, unless otherwise specified in the IEP, the IEP services must be provided as soon as possible after the meeting.

In addition, 34 C.F.R. § 300.343 states:

(a) *General.* Each public agency is responsible for initiating and conducting meetings for the purpose of developing, reviewing and revising a handicapped child's individualized education program....

34 C.F.R. § 300.344 states:

(a) *General.* The public agency shall insure that each meeting includes the following participants:

(1) A representative of the public agency, other than the child's teacher, who is qualified to provide, or supervise the provision of, special education.

(2) The child's teacher.

(3) One or both of the child's parents, subject to § 300.345.

(4) The child, where appropriate.

(5) Other individuals at the discretion of the parent or agency.

"Public agency" is defined in 34 C.F.R. § 300.11:

> As used in this part, the term *public agency* includes the State educational agency, local educational agencies, intermediate educational units, and any other political subdivision of the State which are responsible for providing education to handicapped children.

Further, Policy letter number 13 states:

> *Who can serve as the representative of the public agency at an IEP meeting?*
>
> The *representative of the public agency* could be any member of the school staff, other than the child's teacher who is *qualified to provide, or supervise the provision of specially designed instruction to meet the unique needs of handicapped children....*
>
> Each State or local agency may determine which specific staff member will serve as the agency representative. However, the representative should be able to ensure that whatever services are set out in the IEP will actually be provided and that the IEP will not be vetoed at a higher administrative level within the agency. Thus, the person selected should have the authority to commit agency resources ...

Since the State provides the funding for residential placement, the State must be provided an opportunity to challenge any residential placement. According to the federal regulations, a State representative should be involved at the case conference committee meeting "to ensure that whatever services are set out in the IEP ... will not be vetoed at a higher administrative level". The Indiana Administrative Code provides that the case conference committee will convene "within forty (40) instructional days of the date when written parental consent for an initial or additional educational evaluation is received." *See* 511 IAC 7–12–1(g). This period provides sufficient time to notify the State of the meeting if either the parents or the school requests residential placement for the child. If the State disagrees with the case conference committee's assessment of a child, 511 IAC 7–15–5 allows the State to request a due process hearing to challenge the IEP.

The application review procedure detailed at 511 IAC 7–12–5 provides an extra step to the process. Once the child's IEP is developed and finalized at the case conference committee meeting, the federal regulations indicate that the IEP should be implemented without delay. Under the current Indiana procedures, the parents of a child conceivably could initiate a due process hearing to challenge their child's IEP, submit an application to the State after a favorable ruling by the hearing officer, and then be forced to appeal the State's recommendation through another due process hearing. The State's application review process detailed at 511 IAC 7–12–5 delays the implementation of the IEP and violates the IDEA. *See Antkowiak*, 838 F.2d at 641; and *Diamond v. McKenzie*, 602 F.Supp. 632, 638 (D.D.C.1985).

Finally, the application review procedure does not conform to the minimal procedural safeguards required in Section 1415(d). The application review procedure is not part of the appeal process, but rather it is a *sua sponte* review conducted by the State. In addition, the review committee convened to assess the application is not impartial as required under Section 1415(d) since the State has an interest in the outcome of the review. Finally, some of the procedural safeguards which are required under Section 1415(d) are not provided in 511 IAC 7–12–5. The child is not allowed to have a legal representative present during the review committee's meeting, to present evidence or to confront, cross-examine, and compel the attendance of witnesses. Therefore, Indiana's application review process detailed at 511 IAC 7–12–5 clearly violates the IDEA.

### *Motion to Dismiss Deborah Owens*

In the Motion to Dismiss, Owens states that she "incorporates and adopts in their entirety the Memorandums in Support of Summary Judgment submitted by the Defendants, ... as well as their attached affidavits." Since Owens has incorporated the exhibits with her dismissal motion, it will be treated as a motion for summary judgment.

Owens contends that since she is not a state actor, she cannot be sued under Section 1983. Owens produced evidence with her Motion to Dismiss which indicates that she acted as "the legal consultant and advocate for the School Corporation in which Benjamin Bray resides, through the Northwest Indiana Special Education Co–Operative." *See* Exhibit A, attached to Motion to Dismiss Amended Complaint. The record is unclear as to whether Owens was a full-time employee of NISEC, a part-time employee, or a private attorney retained for this specific matter. However, a private party can be liable under Section 1983 when "he is a willful participant in joint action with the State or its agents." *See Cunningham v. Southlake Center for Mental Health*, 924 F.2d 106, 107 (7th Cir.1991); and *Malak v. Associated Physicians, Inc.*, 784 F.2d 277, 281 (7th Cir. 1986). Therefore, even if Owens is not considered an agent of the State, she can still be liable under the "joint action" theory.

Owens contends that since an attorney giving legal advice does not personally deprive a party of a federally protected right, an attorney cannot be sued under Section 1983. However, Section 1983 states:

> Every person who, under color of any statute, ordinance, regulation or custom, ... subjects or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law....

In the instant case, Owens' legal advice may have caused the alleged deprivation of Benjamin's federal rights. Therefore, an attorney who renders legal advice to a state actor can be sued under Section 1983. *See Donovan v. Reinbold*, 433 F.2d 738, 743–44 (9th Cir. 1970); *Smith v. Montgomery County*, 573 F.Supp. 604, 609 (D.Md.1983); and *Gilbert v. School District*, 485 F.Supp. 505, 509 (D.Col. 1980).

Owens also contends that she is protected by the attorney-client privilege for the advice which she gave NISEC. The doctrine of attorney-client privilege is an evidentiary privilege which deals with the protection of information exchanged between the attorney and client. *See* 8 Wright and Miller, *Federal Practice and Procedure*, § 2017. Owens has failed to cite any cases which equate the attorney-client confidentiality privilege with an immunity from liability. Therefore, whether Owens can invoke the attorney-client privilege is irrelevant to liability under Section 1983.

Finally, Owens contends that she is entitled to qualified immunity if she is considered a state actor. Qualified immunity may be granted to a governmental official who was performing a discretionary function and whose conduct did not violate clearly established federal statutory or constitutional rights which a reasonable person should have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).

Qualified immunity is available only to public officials sued in their individual capacities. *Hadi v. Horn*, 830 F.2d 779, 782 (7th Cir.1987). The Seventh Circuit has held that the plaintiff bears the burden of establishing the existence of a constitutional or federal right. *Rakovich v. Wade*, 850 F.2d 1180, 1209 (7th Cir.1988). In *Green v. Carlson*, 826 F.2d 647 (7th Cir.1987), the court stated that

> in order to determine whether the law was clearly established at the time of the defendant's alleged violation, a court cannot look at the legal norm at issue in the abstract. Rather, the test for qualified immunity is "whether the law was clear in relation to the specific facts confronting the public official when [he or she] acted."

826 F.2d at 649 (*quoting Colaizzi v. Walker*, 812 F.2d 304, 307 (7th Cir.1987))

*See also Anderson v. Creighton*, 483 U.S. 635, 640 n. 2, 107 S.Ct. 3034, 3039 n. 2, 97 L.Ed.2d 523 (1987); and *Sherman v. Four County Counseling Center*, 987 F.2d 397, 401 (7th Cir.1993) (a police officer who obeyed an unchallenged statutory scheme was entitled to qualified immunity).

In the instant case, the law was not clearly established regarding whether the Brays needed to exhaust the available administrative remedies, whether NISEC was required to file a proper application under the facts of the Bray case, or whether the application review process violated the IDEA at

the time Owens rendered legal advice to NISEC. Under the Indiana Administrative Code, Owens could have appealed the hearing officer's decision or filed an application for the State's consideration under 511 IAC 7–12–5. Therefore, since the state administrative scheme did not clearly violate an established federal right, Owens is entitled to qualified immunity.

---

For the reasons set forth above, the Motion to Dismiss the Amended Complaint filed by the defendant, the Indiana Department of Education, on January 24, 1992, is DENIED. The Motion for Summary Judgment filed by the defendants, the Northwest Indiana Special Education Cooperative (NISEC), Patricia Pierce, in her capacity as Director of NISEC and Individually, and Joan Machuca, in her capacity as Assistant Director to NISEC and Individually, on February 6, 1992, is DENIED. The Motion for Summary Judgment filed by the defendants, The Hobart City School Corporation and Eric Witherspoon, Ph.D., in his capacity as Superintendent of the Hobart City School Corporation and Individually, on February 21, 1992, is DENIED. The Motion to Dismiss filed by the defendant, Deborah Owens, on March 2, 1992, is GRANTED.