Maria **GREEN**, Administratrix of the Estate of Joseph Jones, Jr. (a/k/a Roscoe Simmons), and next of kin of Joseph Jones, Jr., Plaintiff-Appellee,

v.

Norman **CARLSON**, Robert L. Brutsche, M.D., and Benjamin DeGracias, M.D., Defendants-Appellants.

No. 86–2096.

United States Court of Appeals, Seventh Circuit.

Argued June 4, 1987.

Decided Aug. 13, 1987.

---

See also, 7th Cir., 813 F.2d 863.

John F. Joyce, Bose, McKinney & Evans, Michael A. Bergin, Locke, Reynolds, Boyd & Weisell, Indianapolis, Ind., for defendants-appellants.

G. Flint Taylor, Jr., Trueblood, Harmon, Carter & Cook, Terre Haute, Ind., for plaintiff-appellee.

Before FLAUM and MANION, Circuit Judges, and GORDON, Senior District Judge.*

FLAUM, Circuit Judge.

Eleven years ago, Maria Green brought this suit, contending that her son's death in the infirmary of the United States Penitentiary at Terre Haute was due to the defendants' deliberate indifference to his serious medical needs. At the close of discovery, the defendants moved for summary judgment on grounds of qualified immunity. The district court, without reference to the specific facts of the case, held that the

---

* The Honorable Myron L. Gordon, Senior District Judge for the Eastern District of Wisconsin, is sitting by designation.

Eighth Amendment right at issue was clearly established at the time of the defendants' alleged misconduct, and therefore ruled that the defendants were not entitled to qualified immunity. We hold that the district court should have reviewed the entire record and considered the qualified immunity issue in light of all the undisputed facts. We therefore vacate the district court's judgment and remand the case for further proceedings.

### I.

On August 14, 1975, Joseph Jones, Jr., a prisoner at the United States Penitentiary at Terre Haute, died of asthma in the prison infirmary. Jones' mother, Maria Green, as the administrator of her son's estate, subsequently brought a *Bivens* action under the Eighth Amendment against, among others, Norman Carlson, the director of the Bureau of Prisons; Robert Brutsche, the medical director of the Bureau of Prisons; and Benjamin DeGracias, the prison doctor. The complaint alleged that Jones' death was caused by the defendants' deliberate indifference to Jones' serious medical needs. On January 10, 1977, the district court dismissed the complaint for lack of subject matter jurisdiction, on the ground that the federal claim could not survive Jones' death. This court reversed, holding that a federal common law right of survivorship existed for *Bivens* actions. *See Green v. Carlson,* 581 F.2d 669 (7th Cir. 1978). The Supreme Court affirmed. *See Carlson v. Green,* 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980).

On remand, after extensive discovery, the defendants moved for summary judgment based on a number of grounds, including qualified immunity. The district court denied the motion. Eighteen months later, after the collapse of a proposed settlement agreement, the defendants again moved for summary judgment, repeating their assertion that they were entitled to qualified immunity. The court denied this motion as well. *See Green v. Carlson,* No. 76 C 93, at 10 (S.D.Ind. June 2, 1986). The defendants now appeal from the district court's denial of qualified immunity.

### II.

#### A.

■ Under the doctrine of qualified immunity, government officials performing discretionary functions are shielded from liability for civil damages unless their conduct violated "clearly established statutory or constitutional rights of which a reasonable person would have known," *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). The Supreme Court has stated that this inquiry is a question of law. *See Mitchell v. Forsyth,* 472 U.S. 511, 528, 105 S.Ct. 2806, 2816, 86 L.Ed.2d 411 (1985). However, in order to determine whether the law was clearly established at the time of the defendant's alleged violation, a court cannot look at the legal norm at issue in the abstract. Rather, the test for qualified immunity is "whether the law was clear in relation to the specific facts confronting the public official when [he or she] acted." *Coliazzi v. Walker,* 812 F.2d 304, 308 (7th Cir.1987); *see Anderson v. Creighton,* — U.S. ——, 107 S.Ct. 3034, 3039 & n. 2, 97 L.Ed.2d 523 (1987).

■ In this case, the district court's analysis of the qualified immunity issue made no reference to the evidence in the record. Rather, the court simply framed the question before it as "whether the constitutional right at issue—that the defendants were deliberately indifferent to the decedent's medical needs—was clearly established as of August 1975." *Green v. Carlson,* No. 76 C 93, at 10 (S.D.Ind. June 2, 1986). The district court therefore erred in not considering the specific facts of this case. *See Anderson,* 107 S.Ct. at 3039.[1]

---

1. In *Anderson,* the plaintiffs brought a *Bivens* action under the Fourth Amendment against Anderson, an FBI agent, based on a warrantless search of their home. The district court granted Anderson's motion for summary judgment on the grounds that Anderson had had probable cause and that there were exigent circumstances. However, the Eighth Circuit reversed, finding that unresolved factual disputes precluded summary judgment on the merits. The Eighth

Both sides in this case agree that the court should have examined evidence beyond the plaintiff's allegations. The parties disagree, however, about what evidence the court should have looked to in determining the "specific facts." The appellants contend that the court should have examined all the undisputed facts, read in the light most favorable to Green; Green argues that the court was limited to "the plaintiff's facts." Whether a district court should consider evidence beyond the allegations in the plaintiff's complaint in determining whether the defendant is entitled to qualified immunity is technically an open question in our circuit, *see Scott v. Lacy,* 811 F.2d 1153, 1154 (7th Cir.1987), although we have implicitly approved the practice, *see, e.g., Kompare v. Stein,* 801 F.2d 883, 889 (7th Cir.1986). We conclude that when considering the qualified immunity issue on a motion for summary judgment, a district court should consider all of the undisputed evidence in the record, read in the light most favorable to the non-movant. Because the district court in this case did not follow this procedure, we vacate its judgment and remand the case for further proceedings.

### B.

The circuits are divided on the issue of whether a district court considering a qualified immunity claim after discovery has begun should examine only the plaintiff's allegations, or whether the court should consider all undisputed evidence in the record in establishing the specific facts necessary to frame the qualified immunity analysis. In *Bonitz v. Fair,* 804 F.2d 164 (1st Cir.1986), the First Circuit concluded that a district court faced with a claim of qualified immunity must "accept[ ] at face value the facts as presented by one party and limit[ ] the immunity inquiry to the clarity of the right violated," *Bonitz,* 804 F.2d at 167. Thus, on appeal the court looked only at the plaintiff's allegations in the complaint, even though the parties had completed discovery.[2]

The Eighth Circuit, however, has concluded that a district court may properly look beyond the plaintiff's allegations when considering a claim of qualified immunity that arises after discovery has begun. In reaching this conclusion, the Eighth Circuit relied on the dissent in *Bonitz,* and on the apparent practice in our circuit. *See Trapnell v. Ralston,* 819 F.2d 182, 184 n. 1 (8th Cir.1987); *Myers v. Morris,* 810 F.2d 1437, 1459 (8th Cir.1987). The *Bonitz* dissent argued that the district court should look beyond the plaintiff's allegations when considering a qualified immunity claim because the relevant inquiry is the defendant's actual conduct. *See Bonitz,* 804 F.2d at 178 (Campbell, C.J., dissenting). In *Kompare v. Stein,* 801 F.2d 883, 889 (7th Cir.1986), without addressing the issue, this court looked beyond the plaintiffs' allega-

Circuit also held that Anderson was not entitled to summary judgment on qualified immunity grounds, because the Fourth Amendment right at issue—"the right of persons to be protected from warrantless searches of their home unless the searching officers have probable cause and there are exigent circumstances," *Anderson,* 107 S.Ct. at 3038—was clearly established. Anderson filed a petition for certiorari on the qualified immunity issue.

The Supreme Court reversed the judgment of the Eighth Circuit. The Court held that the court of appeals had erred in stating the legal principle at issue in overly abstract terms. Under the Eighth Circuit's approach, "[a] passably clever plaintiff would always be able to identify an abstract clearly established right that the defendant could be alleged to have violated," *id.* at 3039 n. 2, and thus "*Harlow* would be transformed from a guarantee of immunity into a rule of pleading," *id.* at 3039. On remand, the

court was to permit Anderson to argue that the law was not clearly established as to the facts of his particular situation. Therefore, although *Anderson* makes clear that the qualified immunity inquiry is tied to the particular facts of the case, the Court left open the question of what evidence the court should look to in establishing these facts.

**2.** In *Mendez-Palou v. Rohena-Betancourt,* 813 F.2d 1255 (1st Cir.1987), the First Circuit retreated somewhat from this position. In the opinion, authored by the same judge as the majority opinion in *Bonitz,* the court stated that when the plaintiff has "alleged the facts defining the harm in sketchy fashion," *id.* at 1259, or has "neglected to indicate why he or she falls within the sphere of protection," *id.* at 1260, the court will consider "other uncontested facts in the record that will permit us to address the immunity question," *id.*

tions to other evidence in the record in deciding whether the defendant was entitled to summary judgment on grounds of qualified immunity. *See also Benson v. Allphin,* 786 F.2d 268 (7th Cir.), *cert. denied,* —— U.S. ——, 107 S.Ct. 172, 93 L.Ed.2d 109 (1986) (examining all the evidence produced at trial in considering motion for judgment notwithstanding the verdict on qualified immunity grounds). In these cases, we implicitly directed a district court, when considering a qualified immunity claim on summary judgment, to examine all the undisputed evidence in the record. We think that this procedure is correct, and therefore we make our direction explicit.

First, our conclusion is consistent with a district court's usual practice in handling a summary judgment motion. On a motion for summary judgment, the district court is not limited to the plaintiff's complaint, but considers all the undisputed facts, read in the light most favorable to the non-movant. *See* Fed.R.Civ.Pro. 56, advisory committee note. The Supreme Court clearly has envisioned that the issue of qualified immunity may arise in the context of a summary judgment motion, and has given no indication that the district court ruling on a motion for summary judgment on grounds of qualified immunity should follow a different procedure than if summary judgment had been requested on other grounds. *See, e.g., Anderson,* 107 S.Ct. at 3042 n. 6 (noting that, on remand, discovery may be necessary to answer the qualified immunity question on summary judgment); *Mitchell,* 472 U.S. at 526, 105 S.Ct. at 2815. Indeed, the *Mitchell* Court itself looked beyond the plaintiff's allegations in determining the defendant's motive. *See, e.g., Mitchell,* 472 U.S. at 535 n. 13, 105 S.Ct. at 2820 n. 13.

Second, our conclusion is consistent with the nature of the qualified immunity in-

quiry. A public official performing a discretionary function is entitled to qualified immunity unless the contours of the right that the official allegedly violated are "sufficiently clear that a reasonable official would understand that what [he or she] is doing violates that right," *Anderson,* 107 S.Ct. at 3039. This inquiry is necessarily "fact-specific," *id.,* and focuses on "the circumstances with which [the official is] confronted," *id.; see Malley v. Briggs,* 475 U.S. 335, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986) ("Under the *Harlow* standard ... an allegation of malice is not sufficient to defeat immunity if the defendant acted in an objectively reasonable manner."). Because qualified immunity turns on the defendant's actual conduct, the district court should examine all the evidence available to it in determining what that conduct was. Thus, when this issue arises on a motion for summary judgment, as in this case, the district court should consider not only the plaintiff's allegations, but all the undisputed facts in the record when deciding whether the defendant's conduct violated clearly established legal principles.

■ Third, our conclusion is consistent with the rationale behind the doctrine of qualified immunity. The doctrine of qualified immunity is intended to shield public officials not only from liability, but also from the burdens of trial. *See Mitchell,* 472 U.S. at 526, 105 S.Ct. at 2815. *Harlow,* 457 U.S. at 816, 102 S.Ct. at 2737. If a district court could never look beyond the plaintiff's allegations when considering a claim of qualified immunity, a complaint with artfully-pleaded facts would eliminate the possibility of qualified immunity, even in cases where discovery later revealed that the plaintiff's initial allegations were incorrect, incomplete, or misleading. This result would greatly weaken a public official's protection against the risks of trial.[3]

---

**3.** Under our holding, the defendant has an incentive to take repeated appeals from the denial of qualified immunity as the case progresses, hoping that the additional evidence will persuade the court to alter its ruling. This case, now eleven years old, may prove to be an example of this problem. This incentive is especially troubling given the close resemblance of the

qualified immunity question to the merits. "[U]nder *Harlow,* the district court must conduct a two-part analysis: (1) Does the alleged conduct set out a constitutional violation? and (2) Were the constitutional standards clearly established at the time in question?" *Wade v. Hegner,* 804 F.2d 67, 70 (7th Cir.1986). The first question concerns "the merits," and ordinarily

Finally, our conclusion is consistent with the Supreme Court's holding in *Mitchell* that the qualified immunity inquiry is a pure question of law, *see Mitchell*, 472 U.S. at 528 n. 9, 105 S.Ct. at 2816 n. 9. The majority in *Bonitz* believed that if a court considered evidence beyond the plaintiff's complaint, it would have to make factual findings about the parties' conduct. *See Bonitz*, 804 F.2d at 167. However, a court considering a motion for summary judgment based on qualified immunity has before it a pure question of law: whether, based on all the undisputed facts, the defendant's conduct violated any clearly established constitutional or statutory right. The court need not (and should not) resolve any disputed questions of material fact.

■ We therefore conclude that when a claim of qualified immunity arises as part of a summary judgment motion, the district court should, as in any summary judgment case, look at all of the undisputed evidence in the record, construed in a light most favorable to the non-movant. *See Bonitz*, 804 F.2d at 178 (Campbell, C.J., dissenting). If the undisputed facts, so read, show that the defendant's conduct, as a matter of law, violated no clearly established legal norms, then the district court must grant the defendant qualified immunity. However, if there are issues of disputed fact upon which the question of immunity turns, or if it is clear that the defendant's conduct did violate clearly established norms, the case must proceed to trial.

### III.

■ The appellants contend that, even though the district court failed to incorporate the undisputed evidence produced by discovery into its qualified immunity analysis, this court should conduct its own examination of the record and decide, reading all the facts in light most favorable to Green, whether the appellants violated any clearly established constitutional or statutory rights. However, in light of the complexity of this case, and the district court's finding that numerous disputed issues of fact remain, we decline to reach the merits of the defendants' qualified immunity claim. Instead, we remand the case for a finding as to whether, based on all the undisputed evidence before the court, it can be established that the defendants' conduct violated clearly established law. The judgment of the district court is vacated and the case remanded for proceedings consistent with this opinion.[4]

there is no appeal from a denial of summary judgment on this issue, because the order is considered interlocutory. However, the second question—the qualified immunity question—is intertwined with the first. Thus, an appellate court reviewing the denial of qualified immunity may occasionally find itself deciding the first question in order to answer the second, even though if the denial of summary judgment were on any other grounds the issue would be unreviewable. As a result, the defendant has an opportunity for "unlimited interlocutory 'merits' appeals from the denial of summary judgment in the guise of appeals concerning limited immunity," *Bonitz*, 804 F.2d at 181 (Campbell, C.J., dissenting). We agree with the dissenting judge in *Bonitz* that the *Mitchell* Court probably did not foresee this result. *See Bonitz*, 804 F.2d at 180–81 (Campbell, C.J., dissenting). However, the result is inescapable, given the premise of *Mitchell* that the two inquiries are "conceptually distinct," *Mitchell*, 472 U.S. at 527–28, 105 S.Ct. at 2816–17.

**4.** The dissent concludes that the district court did in fact apply the standard we have set forth, and offers as proof of this position quotations from the court's discussion of the merits. How-

ever, there is no reason to assume, as the dissent does, that because the district court considered the undisputed facts in its analysis of the merits, the court must also have considered the undisputed facts in its qualified immunity analysis. On the contrary, as we have noted, the district court's qualified immunity discussion made no reference to any of the facts of this case, but focused entirely on the question of whether deliberate indifference to a prisoner's medical needs constituted a clearly established Eighth Amendment violation as of August, 1975. *See supra* at 649. This discussion was clearly insufficient under *Anderson*. *Id.*

The dissent also errs in assuming that, in this case, the disputed facts that precluded summary judgment on the merits would also preclude a grant of qualified immunity. Under *Anderson*, a defendant is entitled to qualified immunity if, as a matter of law, a reasonable official in the defendant's position could believe that his or her actions were lawful. *See Anderson*, 107 S.Ct. at 3038. In this case, a cursory review of the undisputed facts indicates that, based solely on these facts, Carlson and Brutsche may be entitled to qualified immunity, even if the existence of disputed issues of fact precludes a grant

GORDON, Senior District Judge, dissenting.

Because I am unable to agree with the majority's basic conclusions that the district court's analysis "made no reference to the evidence in the record" and that the district court "erred in not considering the specific facts of this case," I respectfully dissent.

Although the Supreme Court in *Mitchell v. Forsyth,* 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985), described the focus of a determination as to qualified immunity as "a purely legal one," *id.* at 528 n. 9, 105 S.Ct. at 2816 n. 9, it is clear that a qualified immunity inquiry requires some examination of the facts in the case. *See Anderson v. Creighton,* — U.S. —, —, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987).

Until the instant decision, the proper technique for a pretrial ruling on the issue of qualified immunity has been "unsettled." *See Scott v. Lacey,* 811 F.2d 1153, 1154 (7th Cir.1987). Assuming that by dint of the majority's expression in the case at bar, it now becomes the rule of this circuit that factual considerations must be explored, I believe that the district court's decisions fully meet not only the *Mitchell* standard but also the newly adopted standard.

In its two written decisions, encompassing 22 pages, the district court amply demonstrated that it had examined the entire record and was basing its summary judgment rulings on the facts.

In its second decision (dated June 2, 1986), rejecting the defendants' request for summary judgment on the ground of qualified immunity, the district court stated:

> While the plaintiff must overcome a high standard of proof to succeed, the defendants cannot escape the fact that Mr. Jones was the fourth prisoner to die at the Terre Haute penitentiary in 1975. It would be premature for this Court to conclude, even with the thousands of pages of material including "new" evidence and case law submitted by counsel in support of the motion, that there is no other interpretation of the facts or that there are no genuine issues as to material facts in this case. On the contrary, there would appear to be serious disputes as to facts and the plaintiff is entitled to her day in court.

Defendants-Appellants App. p. 409.

While it may be argued that the above quotation is somewhat conclusory, it is implied that the trial judge considered "thousands of pages of material." The following portions of the same written decision demonstrate that the district court had, indeed, examined not only the plaintiffs' complaint but also many other factual facets of the record:

> It is undisputed that from January to August, 1975, four prisoners died while in the care, custody and control of the Terre Haute penitentiary. After the death of inmate, William Lowe, on January 6, 1975, Mr. Carlson and Dr. Brutsche discussed the information they received regarding Loew's [sic] death. Dr. Brutsche subsequently traveled to the Terre Haute penitentiary to conduct what he terms a "clinical-type analysis" regarding the treatment and care of Mr. Lowe. The plaintiff questions this and terms Dr. Brutsche's investigation a cover-up which ignored the systematic problems and resource inadequacies which contributed to Mr. Lowe's death.
>
> Regarding Dr. Brutsche's investigation into Mr. Lowe's death, it is undisputed that Dr. Brutsche recommended to Warden Charles Benson that Dr. Silverman, the full-time physician at the penitentiary, be dismissed from his position. Dr. Silverman subsequently resigned on January 17, 1975. Dr. Brutsche also recommended that a "nursing Kardex" be established at all Bureau of Prisons' institutions to alleviate a deficiency in record keeping. Dr. Brutsche also recommended that progress notes on inpatients be improved. The Court initially feels

---

of summary judgment on the merits. However, because the record is complex and extensive, and because the district court chose not to discuss all the material factual disputes it had found, we remand rather than reverse the district court's judgment.

that these facts indicate a good-faith investigation on the part of Dr. Brutsche, not a cover-up. However, it is unclear whether any of Dr. Brutsche's recommendations other than Dr. Silverman's dismissal were implemented. Whether the failure to see that his recommendations were in fact implemented was reasonable, negligent, or deliberately indifferent to the needs of the prison population when more inmate deaths occurred is a question of fact for the jury and not one for the Court to resolve on a motion for summary judgment.

. . . .

The record contains other factual discrepancies. The matters discussed herein are *only examples* of conflicting issues of material fact and are not to be taken as the only conflicts in the record. (emphasis in the original).

Defendants-Appellants App. pp. 405–407.

In its decision of October 19, 1984, in which the district court first denied the defendants' application for summary judgment on the ground of qualified immunity, it explicitly itemized the materials that it examined in reaching its conclusions:

> The Court has considered the statements of facts and briefs in support of the motions. The Court also has considered the following documents filed with respect to the motion: Certified exhibits "A" through "J" filed by defendants Norman Carlson and Robert L. Brutsche, M.D. (inasmuch as those defendants are represented by the same counsel all other references in this entry are to "Carlson/Brutsche"); the deposition of Norman Carlson and exhibits attached thereto; the deposition of Robert L. Brutsche, M.D. and exhibits attached thereto; the affidavits of Charles L. Benson, Robert L. Brutsche, Larry E. Madigan, John W. Smith, William Garrigan, Edward Griffin, Johnny Copher, John Freed, and Mark O. Thompson, all filed by Carlson/Brutsche; the affidavits of William Walter, David Saxner, Robert L. Cohen, M.D., and Ralph T. Potkin, M.D., all filed

by the plaintiff in her response to the motions for summary judgment.

Defendants-Appellants App. pp. 215–216.

The principal thrust of the defendants on this appeal is that their actions did not violate any of the decedent's "clearly established" constitutional rights; although that is surely the gravamen of the defendants' appeal, the majority has reversed on the ground that the district court failed to recite the factual basis for its denial of summary judgment. However, the latter ground was not even advanced by the appellants, and, more importantly, it is an erroneous ground as, I believe, the quoted portions of the record establish. This flawed view on the part of the majority is especially troublesome when it means that upon remand, the district court will be obliged to retrace the same ground that it has twice before traveled in this eleven-year-old case.

Judge Brooks' findings that there are inconsistencies in the evidence and that there are genuine issues as to material facts for trial regarding the defense of qualified immunity should be affirmed.