Richard E. MAXWELL,
Plaintiff–Appellee,

v.

The CITY OF INDIANAPOLIS, Sergeant Harry Gurnell, Officer Dennis Rahn, and Officer George Diehl, Defendants–Appellants.

No. 92–2637.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 26, 1993.

Decided June 29, 1993.

Neil L. Weisman (argued), Bleecker, Brodey & Andrews, Indianapolis, IN, for plaintiff-appellee.

Andrew P. Wirick, City Counsel (argued), City–County Legal Dept., MaryAnn G. Oldham, City–County Legal Div., Indianapolis, IN, for defendants-appellants.

Before BAUER, Chief Judge, FLAUM, and MANION, Circuit Judges.

FLAUM, Circuit Judge.

*America's Most Wanted* airs on Sunday nights in Indianapolis. Rudell Combs, as well as several other employees of K–Whit Tool Company, tuned in on July 1, 1990. That night the program featured fugitive Don Moore, a former teacher wanted in Los Angeles for twenty-one counts of "fondling, masturbation, oral copulation and sexual intercourse with several of his fifth grade students." After viewing the program, Combs and other employees were convinced that coworker Richard Maxwell was Moore. The next morning Combs called *America's Most Wanted* and explained why he and other K–Whit employees believed Maxwell to be Moore. According to them, Maxwell's age, general appearance, a missing finger tip, and his precise handwriting matched the description of Don Moore. In addition, Maxwell did not report to work the day after the episode ran.

After being contacted by *America's Most Wanted*, Detective Lyon of the Los Angeles Police Department faxed a copy of a police bulletin and the *America's Most Wanted* information sheet to Sergeant Harry Gurnell in Indianapolis. The bulletin, dated September 11, 1987, contained a photograph of Moore, a fingerprint classification, and specific identifiers. According to the bulletin, Moore is a

male caucasian born on September 25, 1933 who is 5'11", weighs 175 pounds, and has grey hair, green eyes, a fair complexion, a grey moustache and a goatee. In addition, Moore is missing the tip of his left index finger.

On the morning of July 3, 1990, Sergeant Gurnell, Officer Rahn, and Officer Diehl went to K–Whit Tool Company and talked with Combs. Then they summoned Maxwell to the front office to interview and observe him. Maxwell presented his Michigan driver's license, his birth certificate, and a social security card. It turns out that Maxwell is also a male caucasian born in 1933 who has grey hair, grey eyes, a grey mustache, and a fair complexion. But the similarities end there: Maxwell is 6'5", weighs 270 pounds, and is missing the tip of his left middle finger.

Naturally, Maxwell protested that he was not Moore. Believing otherwise, the officers handcuffed Maxwell and took him downtown to the Indianapolis Police Department for fingerprinting. The fingerprints established conclusively that Maxwell was not Moore. Officer Diehl and Officer Rahn then returned Maxwell to K–Whit Tool Company and notified Maxwell's superiors that he was not Moore. Maxwell sued.

## I.

■ In response to Maxwell's suit, brought under 42 U.S.C. § 1983, the three officers, claiming that they had probable cause for the arrest and were entitled to immunity in any case, requested summary judgment. Their motion was unsuccessful, a decision we review *de novo. Doe v. Allied–Signal, Inc.,* 925 F.2d 1007, 1008 (7th Cir. 1991); *DeBruyne v. Equitable Life Assurance Soc'y,* 920 F.2d 457, 463 (7th Cir.1990). We can affirm the district court's ruling on any basis finding support in the record. *Dairyland Financial Corp. v. Federal Intermediate Credit Bank,* 852 F.2d 242, 244 (7th Cir.1988). In examining the record, we draw all reasonable inferences from it in the light most favorable to the non-moving party. *Lohorn v. Michal,* 913 F.2d 327, 331 (7th Cir. 1990). The non-moving party must identify specific facts to establish that there is a genuine triable issue. If we find evidence

sufficient to sustain a jury verdict in favor of the non-moving party, we will affirm the denial of summary judgment. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986).

### A.

■ The three police officers initially argue that they were performing the "functional equivalent" of an investigatory stop under *Terry.v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Therefore, they need only demonstrate that they had a reasonable suspicion. In their eyes, the substantial correlation of identifiers and the independent corroboration by Maxwell's fellow K–Whit employees created the necessary reasonable suspicion. But the officers themselves acknowledge that they handcuffed Maxwell and took him to Police Headquarters for fingerprinting. This is the "functional equivalent" of an arrest. *See Hayes v. Florida,* 470 U.S. 811, 105 S.Ct. 1643, 84 L.Ed.2d 705 (1985) (suspect taken to stationhouse for fingerprinting); *Florida v. Royer,* 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983) (suspect taken to interrogation room); *Dunaway v. New York,* 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979) (suspect taken to stationhouse); *United States v. Glenna,* 878 F.2d 967, 975 (7th Cir.1989) (Flaum, J., dissenting) (handcuffs allowed in *Terry* stop only to protect safety of police officers and to prevent flight). Because the conduct of the officers in this instance had all the trappings of a traditional arrest, they would need to have had probable cause to take Maxwell in for fingerprinting.

### B.

■ The police have probable cause to arrest an individual when " 'the . facts and circumstances within their knowledge and of which.they [have] reasonably trustworthy information [are] sufficient to warrant .a prudent [person] in believing that the [suspect] had committed or was committing an offense.' " *United States v. Goudy,* 792 F.2d 664, 668 (7th Cir.1986) (quoting *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964)); *see also United States v. Ingrao,*

897 F.2d 860, 862 (7th Cir.1990); *United States v. Serna–Barreto,* 842 F.2d 965, 966 (7th Cir.1988). Probable cause is often a matter of degree, varying with both the need for prompt action and the quality of information available. *See Illinois v. Gates,* 462 U.S. 213, 238–39, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983); *Gramenos v. Jewel Companies, Inc.,* 797 F.2d 432, 438 (7th Cir.1986), *cert. denied,* 481 U.S. 1028, 107 S.Ct. 1952, 95 L.Ed.2d 525 (1987). While many formulations for probable cause exist, all refer to the exercise of judgment, which "turn[s] on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Gates,* 462 U.S. at 232, 103 S.Ct. at 2329. These sorts of assessments typically would fall within the province of the jury, which determines whether probable cause existed in a given case and if not, whether the officer, unless immune, is liable for damages.

■ If the underlying facts supporting the probable cause determination are not in dispute, the court can decide whether probable cause exists. *See Banish v. Locks,* 414 F.2d 638, 641 (7th Cir.1969); *Schertz v. Waupaca County,* 875 F.2d 578, 582 (7th Cir. 1989). Normally, this decision occurs in the context of a motion to suppress evidence, which requires a judge to review both law and fact and to decide when conduct exceeds the bounds of reasonableness. On the other hand, if the question of probable cause arises in a damages suit, it is a proper issue for the jury if there is room for a difference of opinion concerning the facts or the reasonable inferences to be drawn from them. *See Llaguno v. Mingey,* 763 F.2d 1560, 1565 (7th Cir.1985) (en banc) (plurality opinion); *Moore v. Marketplace Restaurant, Inc.,* 754 F.2d 1336, 1346–47 (7th Cir.1985); *see also Lester v. City of Chicago,* 830 F.2d 706, 715 (7th Cir.1987) (whether police had probable cause to arrest for disorderly conduct is a jury question). Accordingly, a conclusion that probable cause existed as a matter of law is appropriate only when no reasonable jury could find that the officers did not have probable cause to arrest Maxwell.

■ The three officers insist that because no facts are in dispute, the district court should have resolved the probable cause issue as a matter of law. They offer several pieces of circumstantial evidence in support of finding probable cause: the similarity in general appearance between Maxwell and the fugitive described in the warrant, the missing finger tip, the neat handwriting, and the "witness" identifications by the *America's Most Wanted* fans at K–Whit. Originally, Sergeant Gurnell reported that Maxwell matched everything they had on paper about Moore. Although neither he nor the other officers now believe this to be true, they nonetheless maintain that the discrepancy between the description in the warrant and the appearance of the person arrested by them did not undermine probable cause. *Cf. Patton v. Przybylski,* 822 F.2d 697, 699 (7th Cir.1987) (mistaken arrest of person bearing same name as that in warrant found after spot check during a stop for traffic violation does not violate Fourth Amendment); *Johnson v. Miller,* 680 F.2d 39, 41 (7th Cir.1982) (execution of valid arrest warrant against person bearing same name as that in warrant does not violate the Fourth Amendment even if person described in the warrant differs from person arrested).

Nevertheless, we cannot say that the trial court, on the record before it, could summarily decide the issue of probable cause. Neither *Patton* nor *Johnson* is dispositive on this point. In both cases our decision turned on the fact that the name of the arrestee was the same as that in the warrant. Here both the names and circumstances differ. Consequently, the discrepancies between Maxwell and the fugitive Moore loom larger. A review of the description of Moore in comparison to the appearance of Maxwell does raise a substantial question as to whether a prudent police officer would have probable cause to believe Maxwell was Moore.

Presumably, a T.V. show such as *America's Most Wanted,* undoubtedly viewed by millions, would broadcast descriptions that have a high degree of reliability. Otherwise, one risks people fingering neighbors—or co-workers—who loosely fit the description of one or another fugitive. In view of this, a number of differences between the specific descriptors of Moore and the appearance of

Maxwell may be sufficiently disparate to undermine probable cause in this instance. Maxwell is a full six inches taller than Moore and weighs almost one hundred pounds more. While weight is a mutable characteristic, the size of the difference here should have given the police officers pause. In the same vein, Maxwell was missing the tip of his left middle finger, not his left index finger. Certainly a missing finger tip in an industrial plant cannot be so unusual that the officers would not have scrutinized more closely which particular finger tip was damaged. Furthermore, although Maxwell presented out-of-state identification, neither the officers' affidavits nor their report indicate that any of them asked Maxwell about his work record or work history. And curiously, it appears that none of the officers asked him for an alibi, or even whether he would consent to fingerprinting.

No other factors in this instance can be construed as circumstances warranting an arrest. The three officers do suggest, rather implausibly, that being alerted to the possible presence of the fugitive Moore in their jurisdiction somehow created some sort of exigent circumstances militating in favor of prompt and decisive action. Had Maxwell been Moore, the police officers contend, he might have either gone out and committed further sex crimes or suicide, as he had previously attempted. However, we do not normally arrest people to protect them from themselves. More significantly, other than the warrant faxed from Los Angeles, the officers had no grounds for suspecting Maxwell was engaging in any of the conduct Moore was charged with. While the officers may prefer a standard of "better safe than sorry," they cannot hope to bootstrap an improbable threat to the community into probable cause given the apparent mismatch between Maxwell and the fugitive Moore. To the extent that the presence or absence of probable cause turns on the resemblance of Maxwell to the descriptors and photograph of the fugitive Moore, the question necessarily becomes a factual one for the jury. *Llaguno*, 763 F.2d at 1565; *see Reardon v. Wroan*, 811 F.2d 1025, 1029 (7th Cir.1987) (per curiam). In this regard, we are unable to say that a jury could not reasonably conclude on these facts that the discrepancies are too significant to support a finding of probable cause.

### C.

▮ In response, the three officers maintain that they are nevertheless entitled to summary judgment on the grounds of qualified immunity. Under the doctrine of qualified immunity, "public officials performing discretionary functions are protected against suits for damages unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." *Doe v. Bobbitt*, 881 F.2d 510, 511 (7th Cir.1989) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)). Official immunity would shield them from both damages and the burdens of trial; therefore, the availability of immunity in a given case should be decided as early as possible in litigation. *Hunter v. Bryant*, — U.S. —, —, 112 S.Ct. 534, 536, 116 L.Ed.2d 589 (1991) (per curiam); *Mitchell v. Forsyth*, 472 U.S. 511, 526–27, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985). To determine whether the law was clearly established at the time of the alleged violation, we ask "whether the law was clear in relation to the specific facts confronting the public official when he or she acted." *Green v. Carlson*, 826 F.2d 647, 649 (7th Cir.1987); *accord Powers v. Lightner*, 820 F.2d 818, 821 (7th Cir.1987), *cert. denied*, 484 U.S. 1078, 108 S.Ct. 1057, 98 L.Ed.2d 1019 (1988). In this regard, no one disputes that the constitutional right not to be arrested without probable cause is well established, as it was prior to Maxwell's arrest. Therefore, rather than alleging the violation of some broad constitutional right, such as the right to be free from unreasonable seizures, Maxwell must demonstrate that reasonable officers confronting the specific facts and relevant law in this case would have known that their conduct violated Maxwell's constitutional rights.

The rub here lies in the substantial, if not complete, overlap of the issue of immunity and the principal issue on the merits. The three officers attempt to draw a distinction by contending that the relevant inquiry is into "arguable probable cause," which is an-

other way of asking whether they had probable cause to think they had probable cause. *See Malley v. Briggs,* 475 U.S. 335, 345, 106 S.Ct. 1092, 1098, 89 L.Ed.2d 271 (1986). This assumes, however, that probable cause, itself measured on a shifting scale, is independent of what an arresting officer could reasonably have known. If that were true, the belief of the three police officers that the match between Maxwell and Moore created probable cause would be grounds for granting immunity, irrespective of the actual existence of probable cause. But the conduct of the police officers would then depend on their subjective good faith, rather than an objective standard. We require the latter. *Cleveland–Perdue v. Brutsche,* 881 F.2d 427, 430 (7th Cir.1989), *cert. denied,* 498 U.S. 949, 111 S.Ct. 368, 112 L.Ed.2d 331 (1990).

As we have indicated, probable cause, according to an objective standard, does not require that these particular officers believed the person arrested had committed an offense but that a reasonable officer would have believed that person had committed an offense. *Goudy,* 792 F.2d at 668. If that is the case, the arrest is lawful even if the reasonable belief was mistaken. *Hunter,* —— U.S. at ——, 112 S.Ct. at 536. But if a reasonable officer would not have believed that Maxwell was Moore, then the officers, whatever they themselves did or did not believe, are acting contrary to clearly established law and are not entitled to immunity. *Malley,* 475 U.S. at 341, 106 S.Ct. at 1096; *Simkunas v. Tardi,* 930 F.2d 1287, 1291 (7th Cir.1991); *Jones v. City of Chicago,* 856 F.2d 985, 994 (7th Cir.1988). In effect, we have come full circle on the probable cause question. Because we have already established that the conclusion by the three officers concerning the existence of probable cause may be found to be objectively unreasonable, they are not entitled to qualified immunity at this juncture.

For the foregoing reasons, the decision of the district court is AFFIRMED.