In the

# United States Court of Appeals
## For the Seventh Circuit

No. 05-4225

LEON WASHINGTON and
CLARA WASHINGTON,

*Plaintiffs-Appellees*,

*v.*

JAMES HAUPERT, JOEL SLYGH and
FRED ROGERS,

*Defendants-Appellants.*

Appeal from the United States District Court
Northern District of Indiana, Fort Wayne Division.
No. 03 C 96—**Theresa L. Springmann**, *Judge.*

ARGUED SEPTEMBER 14, 2006—DECIDED MARCH 27, 2007

Before CUDAHY, MANION, and ROVNER, *Circuit Judges.*

CUDAHY, *Circuit Judge.* Leon and Clara Washington were arrested for domestic battery by the defendant police officers on January 30, 2001. The plaintiffs claim that they were simply play-fighting when Clara Washington mistakenly called 911. In January 2002, the plaintiffs brought a 42 U.S.C. § 1983 lawsuit against the City of Fort Wayne, Officer James Haupert, Officer Joel Slygh and Sergeant Fred Rogers (collectively, "the officers"). The plaintiffs argue that the officers violated their Fourth Amendment right to be free from unreasonable seizure by arresting them without probable cause. Officer Haupert,

Officer Slygh and Sergeant Rogers filed a motion for summary judgment on the basis of qualified immunity. The district court denied the officers' motion for summary judgment, and they now appeal. We affirm.

## I.  Background

On January 30, 2001, Clara and Leon Washington along with other family members returned home to Fort Wayne from Mississippi, where they had attended the funeral of Clara's brother. After arriving home, in an attempt to cheer Clara, Leon threw a few snowballs at Clara. Their two sons joined in, and Clara also threw some snow back at Leon. The family moved some furniture into the house and then went inside. Leon went upstairs to take a shower and rest. In 2001, Leon and Clara were not residing together in the same home; however, Clara offered Leon her room for the evening since she planned on staying downstairs that night.

At some point later in the evening around 9:00, Clara called up to Leon and asked him to come downstairs. She then called out to Leon offering him a glass of juice. Leon put his hands on her back to let her know that he had come downstairs. At that point, the plaintiffs claim that they playfully dashed a small amount of juice and water on each other. Clara then went to pick up a chair that had been knocked over earlier in the day. Leon, then, jokingly grabbed the chair and threatened Clara with it. Clara then said something to the effect of "Put it down or I'll call 911." Leon let go of the chair and went back upstairs to go to bed.

According to Clara, her sister then called from Mississippi. Clara and her sister discussed their brother's death and the possibility that it might have been a murder. Clara then decided to call the Fort Wayne police to discuss

her brother's death and dialed 911. She claims that she hung up, though, realizing that she should not have called. The 911 operator called back, and Leon answered the phone. According the Clara, she told the operator that there was no problem. To this, the operator responded that she was going to send a police car out in any event.

The following transcript of the 911 call provides a slightly different account.

Q:     911, what is your emergency?

A:     Uh, would you get a car up to 2222 Drexel Avenue, please.

Q:     2222 . . . (beep) Hello . . . (rustling noise) Hello . . . . . . . (beep) Hello (beep, ringing).

Male:   Hello.

Q:     Hello. Can I speak to the woman that I was just speaking to please . . . hello?

A:     Hello.

Q:     Ma'am.

A:     Yes.

Q:     What's the problem on Drexel?

A:     Uh, my husband, uh, tryin' to fight me.

Q:     Has he hit you?

A:     No.

Q:     Is he the one that hung up?

A:     Uh, no the . . . yeah yeah.

Q:     Does he have any weapons?

A:     No.

Q:     Does he . . . has he been drinking?

A:      No.

Q:      Alright [sic] we are going to send the police
        out. If anything happens before they get there
        call us back.

A:      Ok.

Q.      Thank you.

A.      Bye.

Officers James Haupert and Joel Slygh responded to the
call. According to Clara, when the officers arrived, she
explained to them that she was depressed about her
brother's death. She also told them that she and her
husband had been playing around earlier, specifically
mentioning that they had dashed juice and water on each
other. At that point, one of the officers went upstairs to
talk with Leon. According to Leon, he was awakened as
Officer Haupert was coming up the stairs. The officer
asked him if he had a gun, to which Leon responded no.
Officer Haupert then proceeded to question him about
the situation and why the 911 call had been placed. Leon
told him that there was nothing going on and that he did
not know 911 had been called. Officer Haupert then asked
him to come downstairs.

According to the plaintiffs, the officers continued to ask
them about what had happened. At some point, Clara
asked if they were going to jail for calling 911, to which
Officer Slygh responded, "No, you ain't going to jail."
Officer Haupert added, "But if you ever do something like
this again, you will go to jail."

The officers provide a vastly different account of the
conversation with the Washingtons leading up to their
arrest. According to the officers, Clara Washington said
that she and her husband had been arguing and had
thrown water and juice on each other during the argu-

ment. Clara also told them that Leon had grabbed her shoulders with both hands and pushed her into the kitchen. Clara then told the officers that she had grabbed a chair and tried to hit Leon with it in an attempt to defend herself. Clara then said that Leon had held the leg of the chair across her chest and neck and hurt her with it. She claimed that it was painful when Leon choked her with the chair.

According to Officer Haupert, Leon reported that he had been asleep upstairs when Clara came up to the bedroom and began to argue with him. Both officers report that Leon told them that Clara jumped on Leon and said, "You wanna fight mother f_ _ _ _ _!" Leon also told the officers that Clara had scratched him on the back of his neck. Leon then reported that he had gone downstairs with Clara. He told the officers that he and his wife began wrestling over a chair, and Clara scratched his hand and face. Leon reported that it was painful when Clara scratched him. The police officers took nine photographs of the Washington's home and of Leon Washington's face, neck and hand.

At some point, the officers went outside. They returned some time later with Sergeant Fred Rogers. According to the plaintiffs, Rogers said that they were offering conflicting stories and inquired as to what was going on. According to Clara, she then said, "Officer, I'm telling the truth." To which, Sergeant Rogers responded along the lines of, "How you telling the truth when this guy here is scratched up?" Clara then said something like, "Apparently you have a problem with ladies." At that point, according to the plaintiffs, Sergeant Rogers ordered Officer Haupert to arrest Clara. Leon then asked, "You're not taking her to jail for this, are you?" To which Rogers allegedly responded, "Yeah, and you're going, too." At that point, Leon Washington was also placed under arrest.

According to the defendants, after Sergeant Fred Rogers arrived, Clara told him that she had been scratched. At that point, the decision was made to make a dual arrest for domestic battery.

The Information for Domestic Battery, listing Clara Washington as the defendant, provides that she "did knowingly or intentionally touch Leon Washington . . . [i]n a rude, insolent or angry manner, to wit: by scratching, and/or hitting said Leon Washington." The Information was signed by "J. Haupert 1652F." The Information for Domestic Battery, listing Leon Washington as the defendant, provides that he "did knowingly or intentionally touch Clara G. Washington . . . [i]n a rude, insolent or angry manner, to wit: striking her." This record was signed by "Joel C. Slygh #1655F." The domestic battery charges were dismissed by the state on October 5, 2001.

On January 29, 2003, Leon Washington and Clara Washington filed the present lawsuit against Officer Haupert, Officer Slygh, Sergeant Rogers and the City of Fort Wayne in state court, alleging a violation of their Fourth Amendment right to be free from false arrest pursuant to 42 U.S.C. § 1983, as well as claims under state tort law. The defendants removed the lawsuit to federal court. On July 15, 2005, the defendants filed a motion for summary judgment, asserting that they were entitled to qualified immunity. The district court granted the motion as to the City of Fort Wayne on the grounds that it did not maintain an unconstitutional policy or custom (*see Strauss v. City of Chicago*, 760 F.2d 765, 768 (7th Cir. 1985)) but denied the motion as to the individual defendants. Officer Haupert, Officer Slygh and Sergeant Rogers appeal.

## II. Discussion

We review a district court's denial of summary judgment on qualified immunity grounds de novo. *Leaf v. Shelnutt*, 400 F.3d 1070, 1077 (7th Cir. 2005). Summary judgment should be granted where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The evidence and all inferences that reasonably can be drawn from the evidence are construed in the light most favorable to the non-moving party, here, the plaintiffs. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Governmental actors performing discretionary functions are entitled to qualified immunity and are "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In *Saucier v. Katz*, 533 U.S. 194, 200 (2001), the Supreme Court defined a test to determine whether a government actor is entitled to qualified immunity. First, the plaintiff must present evidence that, taken in the light most favorable to the plaintiff, would allow a reasonable fact finder to determine that he has been deprived of a constitutional right. *Id.* at 201. If the plaintiff meets that burden, the court must determine whether the particular constitutional right was clearly established at the time of the alleged violation. *Id.* If the right was clearly established, the government actor is *not* entitled to qualified immunity.

The plaintiffs allege that the defendants violated their Fourth Amendment rights to be free from unreasonable seizure. In order to survive summary judgment, the

plaintiffs first must present evidence which would allow a reasonable fact finder to determine that they were arrested without probable cause. *See Booker v. Ward*, 94 F.3d 1052, 1057 (7th Cir. 1996). The Fourth Amendment permits warrantless arrests only if the arresting officer has probable cause to believe that a crime has been committed. *Thompson v. Wagner*, 319 F.3d 931, 934 (7th Cir. 2003). "In order to have probable cause for an arrest, law enforcement agents must reasonably believe, in light of the facts and circumstances within their knowledge at the time of the arrest, that the suspect had committed or was committing an offense." *Payne v. Pauley*, 337 F.3d 767, 776 (7th Cir. 2003); *see also Beck v. Ohio*, 379 U.S. 89, 91 (1964). Reasonableness turns on what the officers knew, not whether they knew the truth or whether they should have known more. *Gramenos v. Jewel Companies*, 797 F.2d 432, 439 (7th Cir. 1986); *see also Thompson*, 319 F.3d at 934.

The Washingtons were arrested for domestic battery, which Indiana defines as:

> A person who knowingly or intentionally touches an individual who:
>
> > (1) is or was a spouse of the other person;
> >
> > (2) is or was living as a spouse of the other person as provided in subsection (c); or
> >
> > (3) has a child in common with the other person; in a rude, insolent, or angry manner that results in bodily injury to the person described in subdivision (1), (2), or (3) commits domestic battery, a Class A misdemeanor.

Ind. Code § 35-42-2-1.3(a) (2006). Here, in order to allege a constitutional violation, the Washingtons must present sufficient evidence that would allow a jury to conclude that the officers unreasonably believed that the Wash-

ingtons had knowingly or intentionally touched each other in a rude, insolent or angry manner that resulted in bodily injury.

In reviewing a denial of summary judgment on the basis of qualified immunity, we adopt the facts as specified by the district court. *Johnson v. Jones*, 515 U.S. 304, 317 (1995); *Leaf*, 400 F.3d at 1078; *McKinney v. Duplain*, 463 F.3d 679, 688 (7th Cir. 2006). The district court assumed the following facts for purposes of determining the defendants' summary judgment motion. "Clara had juice in her hands and playfully dashed it on Leon." *Washington v. City of Fort Wayne*, No. 1:03-CV-96-TS, slip op. at 4 (N.D. Ind. Nov. 2, 2005). "Leon then playfully picked up a chair to get back at her, but she threatened to call 911." *Id.* "Clara accidentally called 911 and hung up." *Id.* "The operator asked Clara if there was a problem at her home, and Clara responded, 'Uh, my husband, uh, tryin' to fight me.'" *Id.* "Clara told them [Officers Haupert and Slygh] that Leon was asleep, that there was no trouble, and that she and Leon had been playing around." *Id.* "They [Haupert and Slygh] questioned him [Leon] and he confirmed Clara's story." *Id.* In response to Sergeant Rogers' inquiry, "Clara said, 'Officer, I am telling the truth,' to which Sergeant Rogers said, 'How you telling the truth when this guy here is scratched up.'" *Id.* at 5. "When Leon asked them, 'You're not taking her to jail for this, are you?' Sergeant Rogers ordered his arrest as well." *Id.*

Based on these facts, a reasonable jury could find it was not reasonable for the officers to believe that Leon and Clara Washington had committed a crime, namely domestic battery. The plaintiffs described their interactions as "playful," in no way implying that they had touched each other in a "rude, insolent, or angry manner." Moreover, besides a passing reference to being scratched, the plaintiffs did not mention any claims of bodily injury

to the officers. *Cf. Simmons v. Pryor*, 26 F.3d 650, 654 (7th Cir. 1993) (holding that the defendant police officer had probable cause to arrest the husband for domestic battery where officers witnessed the couple "passing licks with open hand," the wife told the officer about the violence which was corroborated by other witnesses and the officer knew of the wife's previously obtained order of protection).

Typically, cases in which we have affirmed the grant of summary judgment on qualified immunity grounds to police officers involve arrests in which a witness, most commonly the putative victim, provides sufficient support to justify the officer's decision. *See Beauchamp v. City of Noblesville*, 320 F.3d 733, 743 (7th Cir. 2003) ("The complaint of a single witness or putative victim alone generally is sufficient to establish probable cause to arrest unless the complaint would lead a reasonable officer to be suspicious, in which case the officer has a further duty to investigate."); *see also Woods v. City of Chicago,* 234 F.3d 979, 987 (7th Cir. 2000); *Guzell v. Hiller*, 223 F.3d 518, 519-20 (7th Cir. 2000); *Tangwall v. Stuckey*, 135 F.3d 510, 516 (7th Cir. 1998); *Gerald M. v. Conneely*, 858 F.2d 378, 381 (7th Cir. 1988); *Gramenos*, 797 F.2d at 439. But, importantly, in the present case, there are no witnesses offering testimony to support the officers' version of the Washingtons' arrests. Both Clara Washington and Leon Washington deny any physical altercation which would qualify as domestic battery under Indiana law, and they claim that they told the officers they were simply play-fighting.

The defendants attempt to rebut the Washingtons' account of their arrest by couching it in a couple of legal arguments, both of which fail. First, the officers argue that the facts offered by the Washingtons, and relied on by the district court to find that genuine issues of material

facts exist, are irrelevant or immaterial, and therefore should not preclude summary judgment. Appellant's Opening Br. at 12. The parties dispute the contents of the conversation leading up to their arrest on the night of January 30, 2001. What was conveyed to the officers goes to the heart of probable cause, and therefore, these facts are relevant and material to this motion. Second, relying on *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), the defendants also contend that the plaintiffs must provide "more persuasive evidence to support their claim" since the "factual context renders the claims asserted by the party opposing summary judgment implausible." *See* Appellant's Opening Br. at 12. *Matsushita* does not apply to the present case since its holding is limited to antitrust law. And, more importantly, whether the Washingtons' story is "implausible" rests on whether they are credible, and we are not in a position to make that assessment. *See Payne*, 337 F.3d at 770-71 (holding that a court may not make "credibility determinations" at the summary judgment stage).

The defendants offer an account of the "undisputed facts," which differs from that relied on by the district court in two important ways.[1] The defendants rely on

---

[1] The "undisputed facts" as described by the defendants are as follows:

> The undisputed facts show that the police officers were called by Clara Washington to the Appellees' residence because of a domestic problem. The undisputed facts show that there was a chair overturned in the kitchen. Officer Haupert took photographs of the chair. The undisputed facts show that Clara Washington told the police officers that Leon Washington had put his hands on her shoulders and scratched her. She told the police officers that she and Leon Washington had dashed juice on each
> (continued...)

photographs taken by Officer Haupert of the Washingtons' kitchen, most notably of an overturned chair, and of Leon Washington's face, hand and neck. The district court did not include a discussion of these photographs in its account of the facts, which it should have.[2] *See Green v. Carlson*, 826 F.2d 647, 651 (7th Cir. 1987) (holding that when qualified immunity turns on the defendant's actual conduct "the district court should consider not only the plaintiff's allegations, but all the undisputed facts

---

[1]  (...continued)
    other. The undisputed facts show that Leon Washington had several scratches on him. Officer Haupert took photographs of the scratches.

Appellant's Opening Br. at 12.

[2] Judge Manion, writing separately, argues that this court must accept the facts as set forth by the district court and therefore should not consider the photographs or the 911 transcript. Since the transcript of the 911 call was in fact considered by the district court, we address only the photographs. In *Johnson v. Jones*, 515 U.S. 304 (1995), the Supreme Court affirmed this court's decision to dismiss an appeal for lack of jurisdiction because the appellants, police officers appealing the district court's denial of summary judgment on qualified immunity grounds, asked this court to determine a question of sufficiency of the evidence. *Id.* at 313. The Court stated that "[w]hen faced with an argument that the district court mistakenly identified clearly established law, the court of appeals *can* simply take, as given, the facts that the district court assumed when it denied summary judgment for that (purely legal) reason." *Id.* at 319 (emphasis added). The appellate court is not required to accept the facts as described by the district court, although in most instances it is appropriate to do so. But, in cases, such as the present one, where the appellants are not asking the court to resolve factual disputes or determine whether the evidence is sufficient, it is appropriate for this court to look beyond the factual account of the district court to all undisputed evidence.

in the record when deciding whether the defendant's conduct violated clearly established legal principles"). Regardless, these photographs do not change the outcome of the decision to deny summary judgement to the defendants, since neither the photograph of the overturned chair nor the photographs of Leon Washington establish probable cause for the Washingtons' arrest.

As for the overturned chair, according to the Washingtons, the chair was overturned when they were moving their things in from the truck. Even if that explanation was not conveyed to the officers, the overturned chair, in light of the Washingtons' account of their conversation with the officers, does not alter our conclusion that the plaintiffs have alleged sufficient facts to allow a reasonable jury to find that the officers lacked probable cause to arrest them. Although the overturned chair itself may not be in dispute, the facts surrounding it certainly are.

The other "undisputed fact" offered by the defendants is the alleged scratches on Leon Washington, which Officer Haupert photographed.[3] The photographs certainly show abrasions of some kind on Leon Washington's chin and hand; any mark on his neck is more difficult to make out. However, we must credit the plaintiffs' story. *See Payne*, 337 F.3d at 777. The photographs, in light of the Washingtons' account of the night of their arrests, do not alter our conclusion that the plaintiffs have alleged sufficient facts for a reasonable factfinder to conclude that the officers lacked probable cause to arrest them. A

---

[3] Incidentally, assuming arguendo that the photographs of the scratches on Leon Washington were sufficient to establish probable cause, the officers only would have had probable cause to arrest Clara Washington, since the photographs only support bodily injury suffered by her husband.

jury should consider what weight, if any, should be given to these photographs in determining whether the defendants had probable cause to arrest the Washingtons. *Cf. Maxwell v. City of Indianapolis*, 998 F.2d 431, 435 (7th Cir. 1993) ("To the extent that the presence or absence of probable cause turns on the resemblance of Maxwell to the descriptors and photograph of the fugitive Moore, the question necessarily becomes a factual one for the jury.")

In asking this court to reverse the district court's denial of summary judgment, the officers are asking us to make credibility determinations, which as previously discussed, is an inappropriate request. "On summary judgment a court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder." *Payne*, 337 F.3d at 770 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). However implausible the Washingtons' account might seem, it is not our place to decide who is telling the truth. "Where the parties present two vastly different stories—as they do here—it is almost certain that there are genuine issues of material fact in dispute." *Payne*, 337 F.3d at 770; *see also Qian v. Kautz*, 168 F.3d 949, 953 (7th Cir. 1999) ("[S]ummary judgment is only appropriate when there is no room for a difference of opinion concerning the facts or the reasonable inferences to be drawn from them."). Viewing the facts in the light most favorable to the plaintiffs, the Washingtons have alleged sufficient facts for a jury to find that they suffered a constitutional violation pursuant to 42 U.S.C. § 1983 by being subjected to unreasonable seizure.

We are now required to examine whether the contours of the alleged constitutional violation were clearly established at the time of the incident. *Saucier*, 533 U.S. at 201. If not, the defendants are entitled to qualified immunity. "To be 'clearly established,' the right in question must be 'sufficiently clear that a reasonable official would

understand that what he is doing violates that right.'" *Miller v. Jones*, 444 F.3d 929, 934 (7th Cir. 2006) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). According to the plaintiffs, the police officers fabricated a police report in order to justify their arrests. A reasonable officer would have understood that what he was doing violated their right to be free from unreasonable seizure. *See Driebel v. City of Milwaukee*, 298 F.3d 622, 652 (7th Cir. 2002) (holding that "innumerable decisions . . . have clearly established the right to be free from arrest without probable cause").

Summary judgment is not appropriate when the facts are disputed as they are here. "[I]f the question of probable cause arises in a damages suit, it is a proper issue for the jury if there is room for a difference of opinion concerning the facts or the reasonable inferences to be drawn from them." *Maxwell*, 998 F.2d at 434; *see also Moore v. Marketplace Rest., Inc.*, 754 F.2d 1336, 1347 (7th Cir. 1985); *Lester v. City of Chicago*, 830 F.2d 706, 715 (7th Cir. 1987). Since we are not in a position to "resolve swearing contests between litigants," we must affirm the district court's denial of summary judgment. *Payne*, 337 F.3d at 770.

## III. Conclusion

For the foregoing reasons, we AFFIRM the district court's denial of the defendants' motion for summary judgment.

MANION, *Circuit Judge*, concurring. I concur. On interlocutory appeal from the denial of qualified immunity, this court must accept the facts as set forth by the district court. *Johnson v. Jones*, 515 U.S. 304, 317 (1995). In this case, the district court stated that under the facts as alleged by the plaintiffs, the plaintiffs "never accused each other of battery or otherwise gave an impression to the officers that they were involved in a domestic dispute." District Court Opinion at 6. This factual finding seemingly conflicts with the content of the 911 tape, as summarized in the district court opinion, as well as the physical evidence presented to the district court in the form of photographs of an overturned chair and scratches on Leon's face. The 911 call indicated that Leon had committed domestic battery and the scratches on Leon indicated that Clara had committed that same offense. And the overturned chair supports the view that a domestic dispute had been under way. Even if the Washingtons disclaimed any dispute once the officers arrived, the officers could still have reasonably disbelieved the Washingtons' story. Thus, it would seem that even accepting the Washingtons' version of the facts, the officers would be entitled to qualified immunity. But the district court read the record differently, stating that the Washingtons never "gave an impression to the officers that they were involved in a domestic dispute." District Court Opinion at 6. On interlocutory appeal, contrary to the court's statement that an "appellate court is not required to accept the facts as described by the district court . . .", *see supra* at 12 n.2, that is precisely what we must do. On appeal from the denial of qualified immunity, this court lacks jurisdiction to review the record to determine whether the district court's summary of the facts is supported by the record evidence. *Johnson*, 515 U.S. at 319-20 ("For these reasons, we hold that a defendant entitled to invoke a qualified immunity defense may not appeal a district

court's summary judgment order insofar as that order determines whether or not the pretrial record sets forth a 'genuine' issue of fact for trial."). *See also Via v. LaGrand*, 469 F.3d 618, 625 (7th Cir. 2006) ("However, on interlocutory appeal of a denial of qualified immunity, this court generally lacks jurisdiction to review the full record. Instead, we may only consider whether the defendant is entitled to qualified immunity given the factual disputes found by the district court." (footnote omitted)). Therefore, given the district court's recital of the facts, I agree that affirmance is appropriate.

A true Copy:

      Teste:

 

 

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*